# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

v.                                                                   **Case No. 10-CR-244**

**FRANCISCO BARBA-HERRERA**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Francisco Barba-Herrera pleaded guilty to unlawful re-entry after deportation, contrary to 8 U.S.C. § 1326(a) & (b)(2), and I ordered a pre-sentence report ("PSR") in anticipation of sentencing. In imposing sentence, the district court must first calculate the advisory guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010).

## I. GUIDELINES

Defendant's PSR set base offense level of 8, U.S.S.G. § 2L1.2(a), added 16 levels because defendant was deported subsequent to his conviction of a drug trafficking offense for which the sentence imposed exceeded 13 months, § 2L1.2(b)(1)(A), then subtracted 3 levels for acceptance of responsibility under § 3E1.1, for a final offense level of 21. Coupled with defendant's criminal history category of III, level 21 produced an imprisonment range of 46-57 months. Neither side objected to these calculations, which I found correct and thus adopted.

## II. SECTION 3553(a)

**A.**     **Sentencing Factors**

Section 3553(a) provides that the court, in determining the particular sentence to be

imposed, shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory] sentencing [guideline] range[;]
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Id.

While the guidelines serve as the starting point and initial benchmark in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009). Rather, the court must make an independent determination, without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007), taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties, see Gall, 552 U.S. at 49-50.

**B.	Analysis**

    **1.	The Offense**

Defendant, a citizen of Mexico, came to the United States in 1981, at age thirteen, with an aunt and uncle. In 1996, he was convicted of possession with intent to deliver cocaine and sentenced to 10 years in prison. Paroled on February 29, 2000, he was removed from the United States on March 6, 2000. He re-entered the United States shortly thereafter.

On October 21, 2009, authorities in Waukesha County, Wisconsin issued a warrant charging defendant with four counts of identity theft, and Homeland Security agents began looking for him. In August 2010, agents determined that he had been living in an apartment on the south side of Milwaukee, but they later received information suggesting that he left Wisconsin. In October 2010, law enforcement arrested defendant in Idaho on the Waukesha County warrant and extradited him to Wisconsin to face charges on the identity theft case.

On November 8, 2010, Homeland Security "found" defendant at the Waukesha County Jail and identified him as the same person removed on March 6, 2000. He never sought or received permission to return to the United States.

In his statement to the PSR writer, defendant indicated that following his re-entry he and his wife retained a lawyer to try to establish legal status. However, it appeared that the lawyer did little other than file a notice of appearance before the INS and order the file from the 1996 criminal case; the lawyer's license was later suspended. Further, it appeared that the 1996 conviction would have made legal status next to impossible, which the lawyer apparently did not tell defendant.

**2.    The Defendant**

At age forty-three, defendant compiled a number of contacts since coming to this country – drunk driving in 1990, driving without a license in 1991, assault in 1991, possession with intent to deliver cocaine in 1996, and then misappropriation of identification in 2011. The final case involved his using another person's identity to buy a truck, and he received a 7 month sentence in state court, essentially time-served.

As stated above, defendant first came to this country with an aunt and uncle in 1981. In 1989, at age twenty-one, he moved to Milwaukee. In 1996, he picked up the drug case, which led to his removal. Following his return, he married in 2002 in Milwaukee, and he and his wife had two children, ages eight and one. Defendant's wife described him as a great father who treated her very well. She stated at the sentencing hearing that she needed defendant, but it appeared unlikely that she and their children, U.S. citizens, would follow him to Mexico. Defendant had another child, age fourteen, from a prior relationship, but he had no contact with him in many years.

Defendant steadily worked in the United States, mainly as a truck driver. In 2009, he obtained employment as a driver in Idaho and relocated there to live with his sister. He did not appear to have substance abuse issues or other treatment needs.

**3.    The Sentence**

The guidelines called for 46-57 months' imprisonment, but both sides agreed that a lesser term would suffice. The government suggested 30 months, while defendant requested a sentence of time-served. On consideration of the arguments, I agreed that a below-guideline sentence – one a bit lower than the government's recommendation – was appropriate.

4

However, I found defendant's suggestion insufficient.

Defendant first indicated that his love for this country prompted him to return. He also noted that he retained counsel in an effort to establish legal residency. Although he did not label it as such, this appeared to be a "cultural assimilation" type argument, which is recognized both as a basis for downward departure, see U.S.S.G. § 2L1.2 cmt. n.8, and a variance from the guidelines, see, e.g., United States v. Lopez-Arellano, No. 10-CR-91, 2010 WL 4363415, at *3 (E.D. Wis. Oct. 27, 2010); United States v. Salazar-Hernandez, 431 F. Supp. 2d 931, 935 (E.D. Wis. 2006). The Commission's guideline, which I found helpful, suggests a departure in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

> In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

U.S.S.G. § 2L1.2 cmt. n.8.

I did not doubt defendant's motive for coming back; nor did I question the difficulty of the situation in Mexico; and, given the nature of his record, I did not see him as posing a significant threat to the public. However, in further considering defendant's situation under the suggested

5

factors, I saw a mixed picture. Defendant originally came to the United States as a child, but it did not appear that he attended American schools; he later earned a GED in state prison. He resided in this country for close to twenty years before his deportation, and he remained in Mexico for just a short time before coming back. His father still lived in Mexico, but his siblings were here. His wife and kids lived here too, but he married and fathered the children after his return, so their presence in the United States obviously did not motivate the re-entry. His criminal record was modest, and he worked steadily, with one of his employers stating that he was among the best drivers he ever had. He also retained a lawyer to work on his status after he came back. He did commit a new crime after re-entering, but it did not appear he returned for the purpose of crime (and his illegal status may have contributed to his commission of that offense).[1] Balancing these factors, I concluded that defendant's motive for returning supported a below-guideline term, but it did not justify the time-served disposition defendant wanted.

Defendant further argued that a lengthy sentence was not required in order to bring home the seriousness of this offense, noting that as a result of this charge he continued to sit in jail. But I did not really see this as a significant mitigating factor. Much of the time defendant spent in custody following his arrest was credited to the identity theft sentence. He had also served prison time before, so this was not new for him. Defendant similarly argued that a time-served sentence would not depreciate the seriousness of this offense. He noted that his criminal history accounted for both the crime that precipitated his removal, and the crime he committed after he came back, which resulted in his discovery by immigration authorities. I have previously discussed how U.S.S.G. § 2L1.2 may, if not double count, at least over-

---

[1] I declined to enhance the punishment in this case due to the aliases defendant used, as discussed in the defense sentencing memo.

6

emphasize prior record by accounting for it in both the horizontal and vertical axes. See United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 961 (E.D. Wis. 2005). Based on the facts recounted in the PSR, it did appear that the sentence imposed on the 1996 drug case was rather harsh. The length of that sentence triggered the 16 level enhancement under § 2L1.2(b)(1)(A), rather than the 12 level increase under § 2L1.2(b)(1)(B). But I could not accept the notion that the time defendant served on the identity theft conviction was "intimately intertwined" with the punishment he would receive for having illegally re-entered. His arrest on the ID theft case led to his being "found in" the United States, but the cases were otherwise unrelated; the ID theft case scored criminal history points, but it did not factor into the offense level in this case. I could not accept that the time he served for the commission of the ID theft offense should be considered by the court as time served in this case. The fact that he committed a new crime after he came back did not mitigate the separate offense of unlawful re-entry.[2]

Finally, defendant noted that after he completed his sentence he would be deported and likely barred from ever lawfully re-entering. Should he ever re-enter, he would face even more severe punishment. However, I could not conclude that imposing a time-served sentence would suffice to deter him from returning. A more substantial penalty was needed; as defendant appeared to recognize, his family and cultural ties to this country could provide a strong temptation to come back, and it did not appear that defendant and his wife had meaningfully dealt with the reality of their situation. Defendant likewise argued that the public

---

[2] As the government noted, the sentence defendant received for identity theft – 7 months – was far less than the 2 year mandatory minimum applicable to such offenses under federal law. See 18 U.S.C. § 1028A.

7

would be adequately protected from any further crimes by his expulsion from the United States. Again, I could not agree that a time-served sentence would suffice to address this purpose of sentencing, not given his record before and after removal. I did consider the fact that deportation likely meant separation from his wife and kids, which added to the punitiveness of the situation. See United States v. Villanueva, No. 07-CR-149, 2007 WL 4410378, at *4 (E.D. Wis. Dec. 14, 2007); United States v. Ferreria, 239 F. Supp. 2d 849, 855-58 (E.D. Wis. 2002).

For these reasons, I found a below-guideline sentence warranted, but I could not find time served sufficient. Under all the circumstances, I found a sentence of 18 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence accounted for the mitigating factors discussed, including cultural assimilation, family ties, and the harsh collateral consequences of deportation, while still providing just punishment, deterrence, and public protection.

### III. CONCLUSION

Therefore, for the reasons stated herein and on the record, I committed defendant to the custody of the Bureau of Prisons for 18 months. Based on his financial situation, I determined that defendant lacked the ability to pay a fine and so waived the fine. Because he faced near certain removal and thus would not be available for supervision, and because it was not required by the statute of conviction, I imposed no supervised release. Other terms and conditions of the sentence can be found in the judgment.

Dated at Milwaukee, Wisconsin, this 6th day of September, 2011.
/s Lynn Adelman

_____
LYNN ADELMAN
District Judge